**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-4189** |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| **DENNIS A. BROWN** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                        **November 23, 2022**

The incarcerated Charles Talbert sues a correctional officer in his individual and official capacity arising from an alleged March 12, 2020 incident with a correctional officer while the Commonwealth detained Mr. Talbert awaiting trial. Mr. Talbert filed a grievance resolved by the facility in late October 2020. He also sues a Pennsylvania state police officer for filing a September 2020 criminal charge for assault. The state court dismissed the criminal complaint a couple months ago for lack of prosecution.

We screened the incarcerated Mr. Talbert's complaint under Congress's mandate. Mr. Talbert cannot proceed on false arrest, false imprisonment, or wrongful prosecution claims because the charging state police officer did not deprive Mr. Talbert of liberty; the Commonwealth already detained him for unrelated charges where he remains today awaiting trial. But Mr. Talbert may proceed on his excessive force claim against the correctional officer for the alleged conduct on March 12, 2020.

Mr. Talbert later moved to amend while we completed screening his Complaint. We screened the amended Complaint and allow him to proceed for damages only arising from conduct on March 12, 2020 against the Department of Corrections under the Americans with Disabilities Act and against the correctional officer for excessive force subject to dispositive motions.

I.      **Alleged *pro se* facts and matters of public record.**

The Commonwealth detained Charles Talbert at SCI Phoenix in early 2020.[1] Correctional Officer Dennis A. Brown went to pull an incarcerated Mr. Talbert out of his cell at SCI Phoenix while handcuffed on March 12, 2020.[2] Officer Brown, along with several other unidentified officers, pulled the tether connected to Mr. Talbert's handcuffs injuring Mr. Talbert's right hand before taking Mr. Talbert out of his cell.[3] Officer Brown, knowing Mr. Talbert had asthma, told another officer to spray Mr. Talbert with oleoresin capsicum spray, which he did.[4] Officer Brown then pulled Mr. Talbert out of his cell and began to choke him from behind.[5] Officer Brown threw Mr. Talbert to the ground and placed his knee on Mr. Talbert's face.[6] Mr. Talbert went to the medical triage area to be treated for his injuries following the incident.[7] Mr. Talbert, at some unidentified time after, filed a grievance related to the alleged assault under the Department of Corrections Inmate Abuse Policy.[8]

Officer Matthew W. Taubenberger filed an affidavit of probable cause against Mr. Talbert related to the alleged assault on September 2, 2020 naming Mr. Talbert as the aggressor.[9] Officer Taubenberger, in the affidavit of probable cause, swears Mr. Talbert spit in Officer Brown's face and Officer Brown positively identified Mr. Talbert (although unclear how) as the person who spit in his face.[10] Mr. Talbert contends video surveillance contradicts this allegation.[11]

A Pennsylvania Magisterial District Judge on September 3, 2020 ordered Officer Taubenberger to fingerprint Mr. Talbert.[12] But Officer Taubenberger never fingerprinted Mr. Talbert.[13] The Judge issued a warrant for Mr. Talbert's arrest the same day with the leading offense identified as assault by a prisoner.[14] The Commonwealth officially charged Mr. Talbert with assault on September 21, 2020 following his arraignment.[15] The security staff at SCI Phoenix

completed its investigation of the alleged assault about a month later on October 26, 2020, and concluded Mr. Talbert substantiated his claims of abuse by Officer Brown.[16]

Officer Brown never appeared at Mr. Talbert's preliminary hearings to positively identify Mr. Talbert or support his allegations.[17] Officer Taubenberger instead "gave hearsay testimony of what allegedly occurred[.]"[18] He also showed a video clip which failed to show Officer Brown pulling Mr. Talbert's handcuff tether, an officer spraying Mr. Talbert with oleoresin capsicum spray, and Officer Brown throwing Mr. Talbert to the ground or putting his knee on Mr. Talbert's face – all of which Mr. Talbert claims occurred.[19] The video clip only showed Mr. Talbert turning his head around, but nothing leaving his mouth going onto Officer Brown's face.[20] Officer Brown never testified about the video clip.[21] The Commonwealth *nolle prossed* the assault charges against Mr. Talbert because of Officer Brown's continuous failure to appear.[22] The trial judge dismissed the criminal assault case against Mr. Talbert on September 27, 2022.[23]

## II.    Analysis

Mr. Talbert *pro se* sued Officers Taubenberger and Brown less than a month after the trial judge dismissed the charges against him.[24] He sues the officers for false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment, excessive force in violation of his Eighth Amendment rights, and state law claims for assault and battery.[25] Mr. Talbert claims he suffered mental anguish, anxiety, and emotional distress defending himself against the assault charges for more than two and a half years.[26] He also alleges physical injuries to his right hand, right wrist, face, head, and jaw.[27] Mr. Talbert seeks monetary damages, punitive damages, costs, and legal fees.[28]

The Commonwealth transferred Mr. Talbert's custody to SCI Coal Township after this incident.[29] Congress at 28 U.S.C. § 1915A requires us to screen the incarcerated Mr. Talbert's

3

Complaint.[30] Congress requires we must "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[31] On review, we must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted."[32]

We apply the same standard used under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint for failure to state a claim under section 1915A(b)(1).[33] A complaint containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" meets the Rule 12(b)(6) standard.[34] We accept all factual allegations in Mr. Talbert's complaint as true and construe those facts in the light most favorable to him to determine whether he states a claim to relief plausible on its face.[35]

We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a *pro se* litigant's pleadings particularly where the *pro se* litigant is imprisoned."[36] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[37] But "*pro se* litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[38]

**A.  We dismiss Mr. Talbert's official capacity constitutional claims with prejudice.**

Mr. Talbert sues Officer Taubenberger, an employee of the Pennsylvania Department of Corrections, and Officer Brown, an employee of the Pennsylvania State Police, in both their official and individual capacities for violating his constitutional rights.[39]

"To state a claim under § 1983, [Mr. Talbert] must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

4

committed by a person acting under color of state law."[40] Official capacity claims against Officers Taubenberger and Brown are indistinguishable from claims against the entity employing the officials.[41] But "[s]tates and their agencies are not considered 'persons' for purposes of § 1983."[42] And "the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages."[43] Since suits against state officials acting in their official capacities are suits against the employing government agency, they are also barred by the Eleventh Amendment.[44]

The Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, so it, its departments, and their officials sued in their official capacities, are immune from suits filed in federal court.[45]

We dismiss Mr. Talbert's official capacity claims against Officers Taubenberger and Brown with prejudice because the Department of Corrections and the Pennsylvania State Police are immune from suit under the Eleventh Amendment.

**B. We dismiss Mr. Talbert's claims against Officer Taubenberger with prejudice.**

Mr. Talbert sues Officer Taubenberger in his individual capacity for false arrest, false imprisonment, and malicious prosecution in violation of his Fourth Amendment rights stemming from the March 12, 2020 conduct.[46] We dismiss these claims with prejudice.

**1. Mr. Talbert's false arrest and imprisonment claims are time-barred and lack merit.**

Mr. Talbert alleges Officer Taubenberger violated his Fourth Amendment rights through false arrest and false imprisonment in September 2020. Mr. Talbert argues Officer Taubenberger lacked probable cause to arrest him making Mr. Talbert's arrest unlawful and his imprisonment caused by the underlying criminal charges unlawful.[47]

Our Court of Appeals has held although "ordinarily, the statute of limitations is an affirmative defense that must be pleaded and [ ] is subject to waiver" we may properly dismiss

claims "for which a time-bar and the absence of meritorious tolling issues" are obvious from the face of the complaint *sua sponte* when screening under 28 U.S.C. § 1915.[48] Pennsylvania's statute of limitations applies to Mr. Talbert's civil rights claims.[49] Pennsylvania provides a two-year statute of limitations for false imprisonment and false arrest claims.[50] The accrual date of a civil rights claim under section 1983 is determined by federal law.[51] "A section 1983 cause of action accrues when [Mr. Talbert] knew or should have known of the injury upon which [his] action is based."[52] Claims for false arrest and false imprisonment accrue, triggering the two-year statute of limitations, on the date the arrestee is arrested and charges are filed against him.[53]

The Magisterial District Judge issued an arrest warrant for Mr. Talbert on September 3, 2020 and arraigned Mr. Talbert on September 21, 2020.[54] Mr. Talbert's false arrest and false imprisonment claims – to the extent he had any – accrued some time in-between then when police arrested him. Mr. Talbert's false arrest and imprisonment claims are time-barred because he filed this case on October 19, 2022 which is more than two years after the accrual date. We recognize Mr. Talbert is incarcerated, the mailbox rule applies, and his Complaint is signed and dated October 10, 2022 (nine days before the clerk's office docketed it on October 19, 2022), but his signed pleading is still more than two years after his claim accrued in September 2020.

Even if Mr. Talbert could timely bring a false arrest or false imprisonment claim, his claims are meritless. "To bring a claim for false arrest, [Mr. Talbert] must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'"[55] Mr. Talbert "cannot state a cognizable claim of false arrest or false imprisonment while he is already in custody for an unrelated offense."[56] The Commonwealth already incarcerated Mr. Talbert at SCI Phoenix in September of 2020 on an unrelated offense when police arrested him for the alleged assault. He did not get arrested because of his alleged March 12, 2020 conduct. Mr. Talbert cannot state a

cognizable false arrest or false imprisonment claim.[57] We dismiss Mr. Talbert's false arrest and false imprisonment claims with prejudice as an amendment would be futile.

### 2.  Mr. Talbert's malicious prosecution claim lacks merit.

Mr. Talbert alleges Officer Taubenberger violated his Fourth Amendment rights through malicious prosecution and, as a result, Mr. Talbert suffered mental anguish, anxiety, and emotional distress defending himself against the alleged assault charges for more than two and a half years.[58] He alleges Officer Taubenberger "initiated a criminal prosecution against [him] with false, fraudulent, and misleading statements, with reckless disregard for the truth . . . with hearsay and perjured testimony[.]"[59] He claims Officer Taubenberger filed a false affidavit of probable cause when he accused Mr. Talbert of being the aggressor against Officer Brown when video surveillance and Mr. Tarbert's own injuries contradict the allegations.[60] Mr. Talbert's malicious prosecution claim is timely. Mr. Talbert's malicious prosecution claim accrued when the lower court granted *nolle pros* on September 27, 2022.[61] Mr. Talbert sued Officer Brown about a month later on October 19, 2022 – well within the two-year statute of limitations period.[62]

To proceed on his malicious prosecution claim under § 1983, Mr. Talbert must be able to plead "(1) [Officer Taubenberger] initiated a criminal proceeding; (2) the criminal proceeding ended in [Mr. Talbert's] favor; (3) [Officer Taubenberger] initiated the proceeding without probable cause; (4) [Officer Taubenberger] acted maliciously or for a purpose other than bringing [Mr. Talbert] to justice; and (5) [Mr. Talbert] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[63]

If Officer Taubenberger "influenced or participated in the decision to institute criminal proceedings," he can be liable for malicious prosecution.[64] "To prevail on a malicious prosecution claim where [Mr. Talbert] was held pursuant to a warrant, [Mr. Talbert] must show that the officers

knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant."[65] Our Court of Appeals has held an inmate suffers no deprivation of liberty and cannot meet the fifth element of his malicious prosecution claim when he is already incarcerated when the charges are brought.[66]

Mr. Talbert pled the first two elements his malicious prosecution claim: (1) Officer Taubenberger initiated criminal proceedings by filing an affidavit of probable cause, and (2) the criminal proceedings ended in Mr. Talbert's favor.[67] Mr. Talbert also alleges Officer Taubenberger lacked probable cause and acted maliciously when he initiated criminal proceedings against Mr. Talbert by filing an affidavit of probable cause because video surveillance, along with Mr. Talbert's injuries, contradicted Officer Taubenberger's affidavit.

But no state actor deprived Mr. Talbert of liberty based on these charges. The Commonwealth incarcerated him at SCI Phoenix on unrelated charges before and after Officer Taubenberger brought the assault charges against Mr. Talbert. He remained incarcerated on unrelated charges after they were brought and then dropped.

We dismiss Mr. Talbert's malicious prosecution claim with prejudice as an amendment would be futile.

### C. Mr. Talbert may proceed on his excessive force claim against Officer Brown.

Mr. Talbert sues Officer Brown in his individual capacity alleging he used excessive force causing him injury in violation of the Eighth Amendment when he removed Mr. Talbert from his cell and allegedly choked him.[68] Mr. Talbert swears the incident occurred on March 12, 2022 although we take judicial notice it occurred on March 12, 2020.

"The Eighth Amendment protects convicted prisoners from any force applied maliciously and sadistically for the very purpose of causing harm."[69] We ask whether Mr. Talbert has plausibly

alleged Officer Brown applied force "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline" when screening an Eighth Amendment excessive force claim.[70] We consider five factors in determining whether Officer Brown applied excessive force: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response."[71] We focus our inquiry on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[72]

Pennsylvania's two-year statute of limitations applies to Mr. Talbert's excessive force claim.[73] But since the Prison Litigation Reform Act includes an administrative exhaustion requirement, "equitable tolling of any statute of limitations is appropriate while an inmate exhausts his administrative remedies."[74] Mr. Talbert's brings his claim more than two years and six months after the alleged assault. But Mr. Talbert filed an initial grievance (although unclear when) related to the alleged assault and SCI Phoenix completed its investigation of the alleged assault on October 26, 2020 and concluded Mr. Talbert substantiated his claims of abuse by Officer Brown.[75] Mr. Talbert "is not deemed to have exhausted his administrative remedies until this final decision on his grievance."[76] Mr. Talbert excessive force claim began to accrue on October 26, 2020 and is timely since he began this case within the two-year statute of limitations period.

Mr. Talbert claims Officer Brown injured his right hand and wrist when pulling him out and his cell. Officer Brown then proceeded to "maliciously choke [Mr. Talbert] from behind[,]" "threw him to the ground" and "placed his knee on [Mr. Talbert's] face" causing "excruciating

pain."[77] We find Mr. Talbert alleged a sufficient basis to proceed into discovery on a claim against Officer Brown for excessive force on March 12, 2020.

Mr. Talbert also first brought claims for assault and battery against Officer Brown. Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."[78] But Mr. Talbert dropped this state law claim in his proposed amended Complaint.

### D. Mr. Talbert may proceed on his claim against the Department under the Americans with Disabilities Act.

Mr. Talbert sues the Pennsylvania Department of Corrections under the Americans with Disabilities Act in his amended Complaint.[79] Mr. Talbert claims, during the alleged March 12, 2020 assault, the Department of Corrections discriminated against him based on his respiratory disability of asthma by spraying him with oleoresin capsicum spray.[80]

To establish an Americans with Disabilities Act claim, Mr. Talbert must demonstrate: (1) "he is a qualified individual with a disability," (2) "who was precluded from participating in a program, service, or activity, or otherwise subject to discrimination," (3) "by reason of his disability."[81] The American with Disabilities Act follows the statute of limitations for the applicable state statute's personal injury actions, which is two years in Pennsylvania.[82]

We recognize Mr. Talbert's Americans with Disabilities Act claim may be time-barred, absent facts from which we could reasonably conclude equitable tolling would be appropriate, since the correctional officer sprayed him with the oleoresin capsicum spray over two years ago in March 2020. But we find, at this time, Mr. Talbert alleged a sufficient basis to proceed on a claim against the Department under the Americans with Disabilities Act.[83]

**III.    Conclusion**

Mr. Talbert sues Officers Taubenberger and Brown in both their individual and official capacities alleging they violated his constitutional rights following an alleged assault. We dismiss Mr. Talbert's official capacity claims with prejudice because the Department of Corrections and the Pennsylvania State Police are immune from suit under the Eleventh Amendment. We must dismiss Mr. Talbert's claims alleging false arrest, false imprisonment, and malicious prosecution against Officer Taubenberger in his individual capacity with prejudice because Mr. Talbert cannot bring these claims while he already had been incarcerated for unrelated offenses. But we will allow Mr. Talbert's excessive force claims against Officer Brown in his individual capacity to proceed.

We also screened Mr. Talbert's proposed amended Complaint seeking damages and equitable relief from the Department of Corrections under the Americans with Disabilities Act, Officer Brown for excessive force, and Officer Taubenberger for the later criminal prosecution. We will allow Mr. Talbert to proceed on his damages claims for excessive force against Officer Brown and his disabilities act claim against the Department subject to dispositive motion on whether the disabilities act claim is timely or is properly plead. We dismiss  his claims for injunctive relief without prejudice but dismiss his claims against Officer Taubenberger with prejudice.

---

[1] We may take judicial notice of publicly available records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim). The Commonwealth arrested Mr. Talbert on January 18, 2019 for a suspected robbery. The Commonwealth charged Mr. Talbert with multiple counts of robbery, terroristic threats, and reckless endangerment in April 2019. Mr. Talbert remains incarcerated for these offenses. His trial is currently scheduled for May 2023. *See Commonwealth v. Talbert*, No. CP-51-CR-0001995-2019 (Phila. Cnty. Com. Pl.); *Commonwealth v. Talbert,* No. CP-51-CR-0002223-2019 (Phila. Cnty. Com. Pl.); *and Commonwealth v. Talbert,* No. CP-51-CR-0002622-2019 (Phila. Cnty. Com. Pl.).

[2] ECF Doc. No. 2 ¶ 6. Mr. Talbert claims the alleged assault occurred on March 12, 2022. *Id.* But based on publicly available records of which we may take judicial notice, this appears to be a typographical error, and the alleged assault occurred on March 12, 2020. *See Commonwealth v. Talbert*, MJ-38124-CR-0000209-2020 (Mont. Cnty. Magis. District Court); *Commonwealth v. Talbert*, CP-46-CR-0000891-2021 (Mont. Cnty. Com. Pl.).

[3] ECF Doc. No. 2 ¶ 7.

[4] ECF Doc. No. 7 ¶¶ 11–12.

[5] ECF Doc. No. 2 ¶ 8.

[6] *Id.*

[7] *Id.* ¶ 9.

[8] *Id.* ¶ 10.

[9] *Id.* ¶¶ 12–13.

[10] *Id.* ¶¶ 15–16.

[11] *Id.* ¶ 13.

[12] *Id.* ¶ 17.

[13] *Id.*

[14] *Id.* ¶ 18.

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 11.

[17] *Id.* ¶ 20.

[18] *Id.* ¶ 22.

[19] *Id.*

[20] *Id.* ¶ 23.

[21] *Id.* ¶ 24.

[22] *Id.* ¶ 27.

[23] *Id.* ¶ 28. "The usual method by which a public prosecutor signifies the formal abandonment of criminal proceedings is by the entry of a *nolle prosequi*." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (internal quotations and citations omitted).

24 ECF Doc. No. 2 ¶ 4. Mr. Talbert also just moved for leave to amend. *See* ECF Doc. No. 7. We interpret Congress's mandate as requiring us to screen the action and then decide whether Mr. Talbert can amend.

25 ECF Doc. No. 2 ¶¶ 30–34.

26 *Id.* ¶ 29.

27 *Id.*

28 *Id.* ¶¶ 30–34.

29 *Id.* ¶ 1.

30 *Shane v. Fauver*, 213 F.3d 113, 116 n. 2 (3d Cir. 2000).

31 28 U.S.C. § 1915A(a).

32 28 U.S.C. § 1915A(b)(1).

33 *Turner v. District Att'y Phila. Cnty.*, No. 22-491, 2022 WL 1568395, at *3 (E.D. Pa. May 18, 2022) (citing *Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

34 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

35 *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)) (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

36 *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)) (internal quotations omitted).

37 *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244).

38 *Id.* (quoting *Mala*, 704 F.3d at 245) (italics added).

39 ECF Doc. No. 2  ¶¶ 2–3.

40 *West v. Atkins*, 487 U.S. 42, 48 (1988).

41 *Geiger v. Conroy*, No. 22-2458, 2022 WL 4585520, at *3 (E.D. Pa. Sept. 29, 2022) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).

---

[42] *Stewart v. Ziegler*, No. 22-1379, 2022 WL 15525748, at *3 (E.D. Pa. Oct. 27, 2022) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989)).

[43] *Id*.

[44] *Id*. (internal citations omitted).

[45] 42 Pa. Cons. Stat. § 8521; *see also Fletcher v. Dep't of Corr.*, 856 F. App'x 359, 362 (3d Cir. 2021) ("[T]he District Court properly dismissed the Department of Corrections because it is immune under the Eleventh Amendment from this § 1983 action[.]"); *Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) ("The District Court correctly determined that the Eleventh Amendment bars claims for damages against the [Pennsylvania State Police], a state agency that did not waive its sovereign immunity.").

[46] ECF Doc. No. 2 ¶¶ 30–31.

[47] *Id*.

[48] "Ordinarily, the statute of limitations is an affirmative defense that must be pleaded and that is subject to waiver . . . But, for the claims for which a time-bar and the absence of meritorious tolling issues were obvious from the face of the complaint, the District Court could properly dismiss them as time-barred sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii)." *Moore v. Pennsylvania*, No. 22-1945, 2022 WL 7375509, at *2 (3d Cir. Oct. 13, 2022) (internal citations omitted); *see also Williams v. Krasner*, No. 22-1203, 2022 WL 4331410, at *2 (E.D. Pa. Sept. 19, 2022) ("[T]he Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint.").

[49] "Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

[50] 42 Pa. C.S. § 5524.

[51] *Wallace*, 549 U.S. at 388; *see also Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014).

[52] *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

[53] *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (noting claim for false arrest accrues on date of arrest); *see also Wallace*, 549 U.S. at 389 ("[A] false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges"); *Bell v. United States*, No. 1918025, 2021 WL 1153144, at *4 (D.N.J. Mar. 26, 2021) ("A claim of false arrest, and the accompanying claim for false imprisonment, accrues immediately upon the arrest at issue."); *O'Brien v. United States Fed. Gov't*, No. 18-1787, 2018 WL 3649029, at *8 (E.D. Pa. July 31, 2018), *aff'd*, 763 F. App'x 157 (3d Cir. 2019).

---

[54] ECF Doc. No 2. ¶¶ 18–19.

[55] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (internal quotations omitted)).

[56] *Andrews v. Knight, et al*., No. 17-0962, 2022 WL 16837055, at *10 (E.D. Pa. Nov. 9, 2022) (holding arrestee could not state a cognizable claim for false arrest when police arrested him for aggravated assault because he had already been in custody for an unrelated offense when the arrest occurred) .

[57] Police arrested Mr. Talbert in January 2019 for a suspected robbery. A state court judge charged Mr. Talbert with multiple counts of robbery, terroristic threats, and reckless endangerment in April 2019. Mr. Talbert remains incarcerated for these offenses with his trial currently scheduled for May 2023. *See Commonwealth v. Talbert*, No. CP-51-CR-0001995-2019 (Phila. Cnty. Com. Pl.); *Commonwealth v. Talbert,* No. CP-51-CR-0002223-2019 (Phila. Cnty. Com. Pl.); *and Commonwealth v. Talbert*, No. CP-51-CR-0002622-2019 (Phila. Cnty. Com. Pl.).

[58] ECF Doc. No. 2 ¶¶ 29, 32.

[59] *Id*. ¶ 32.

[60] *Id*. ¶¶ 13–14.

[61] *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor[.]"); *see also Moore v. Pennsylvania*, No. 22-1945, 2022 WL 7375509, at *2 (3d Cir. Oct. 13, 2022).

[62] ECF Doc. No. 2; 42 Pa. C.S. § 5524.

[63] *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017).

[64] *Giddens v. Stewart, et al*., No. 20-CV-01474, 2021 WL 3100188, at *5 (E.D. Pa. July 22, 2021) (internal citations omitted). Police officers, as opposed to prosecutors, may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor. *Garcia v. Wind Creek Bethlehem, LLC*, No. 22-00292, 2022 WL 4130754, at *9 (E.D. Pa. Sept. 12, 2022) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)). For example, "an officer is liable if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." *Id*. (citing *Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 644 (E.D. Pa. 2017)).

[65] *Poteat v. Lydon*, No. 21-03117, 2022 WL 3213536, at *6 (E.D. Pa. Aug. 9, 2022) (internal citations omitted).

[66] *Gray v. Wittman*, 839 F. App'x 669, 671 (3d Cir. 2021) ("[Incarcerated man] suffered no deprivation of liberty; he was already incarcerated and would have been detained on the other counts of conviction in any event."); *Curry v. Yachera*, 835 F.3d 373, 380 (3d Cir. 2016) ("[Detective] never deprived [incarcerated man] of his liberty 'as a consequence of' the charges

[detective] brought against [him]. [The incarcerated man's] liberty had already been deprived" because he "was already incarcerated on [other] charges when [detective] brought his charges against [him].").

[67] ECF Doc. No. 2 ¶¶ 12, 27–28; *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) ("A nolle prosequi disposition is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain that outcome.").

[68] ECF Doc. No. 2 ¶ 34.

[69] *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 193 (3d Cir. 2021) (internal quotations and citations omitted). An Eighth Amendment claim has both an objective and subjective component. *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (internal citations omitted). Officer Brown must have acted with a "sufficiently culpable state of mind," and "the conduct must be objectively harmful enough to violate the Constitution." *Id*. (internal citations omitted).

[70] *Pumba v. Volpe*, No. 22-2929, 2022 WL 14803672, at *6 (E.D. Pa. Oct. 25, 2022).

[71] *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).

[72] *Id*. (quoting *Smith*, 293 F.3d at 649).

[73] *Hickox v. Cty. of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014).

[74] *Jordan v. Murin*, No. 18-00228, 2019 WL 3997897, at *3 (W.D. Pa. July 25, 2019), *report and recommendation adopte*d, No. 18-228-SPB-RAL, 2019 WL 3997245 (W.D. Pa. Aug. 23, 2019); *See Thompson v. Pitkins*, 514 F. Appx. 88, 90 (3d Cir. 2013) (holding "[b]ecause exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts"); *see also Carter v. Pa. Dep't of Corrections*, 2008 WL 5250433, at * 11 (E.D. Pa. Dec. 17, 2008) (holding "[t]he statute of limitations begins to run only when [a] plaintiff has exhausted his administrative remedies under the [Prison Litigation Reform Act]").

[75] *Id*. ¶ 11.

[76] *Jordan v. Murin*, No. 18-00228, 2019 WL 3997897, at *3 (W.D. Pa. July 25, 2019).

[77] ECF Doc. No. 2 ¶¶ 7–8

[78] *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 744 (E.D. Pa. 2014) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994)).

[79] ECF Doc. No. 7 ¶¶ 48–53.

[80] *Id*.

[81] *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

[82] *Nase v. Bucks Cnty. Hous. Auth.*, No. 16-02417, 2016 WL 5390648, at *3 (E.D. Pa. Sept. 27, 2016); *see also* 42 U.S.C. § 12132; *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008).

[83] *See Bernard v. Baldwin*, No. 20-5368, 2022 WL 847628, at *3 (N.D. Ill. Mar. 22, 2022) (allowing prisoner to sue the state correctional facility under the American with Disabilities Act where the prisoner alleged prison officers sprayed him with gas foam, oleoresin capsicum spray, and assaulted him); *Brady v. Fla. Dep't of Corr.*, No. 11-510, 2011 WL 5307856, at *2 (N.D. Fla. Nov. 1, 2011) (denying the Florida Department of Corrections motion to dismiss a prisoner's claim under the American with Disabilities Act where the prisoner's estate alleged the prison sprayed the prisoner with oleoresin capsicum spray although he had asthma, which caused his death).